```
              UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


JARED DEMPSEY                    :     CIVIL NO. 1:06-CV-1363
                                 :
          Plaintiff              :     (Judge Conner)
                                 :
     v.                          :     (Magistrate Judge Smyser)
                                 :
JO ANNE B. BARNHART,             :
Commissioner of                  :
Social Security                  :
                                 :
          Defendant              :
```

**REPORT AND RECOMMENDATION**


The plaintiff has brought this civil action under the authority of 42 U.S.C. § 405(g) to obtain judicial review of the decision of the Commissioner of Social Security denying the claim of the plaintiff for Social Security disability insurance benefits.


On September 7, 2004, the plaintiff, Jared Dempsey, applied for disability insurance benefits. He claimed that he became disabled on January 1, 2001, as the result of hypertrophic cardiomyopathy. The claim was denied initially

and on reconsideration.  The plaintiff filed a request for a hearing, and a hearing was held before an administrative law judge (ALJ) on November 15, 2005.

At the November 15, 2005 hearing, the plaintiff testified and Patricia Chilleri, a vocational expert, testified.  Tr. 204-223.  The plaintiff stated that he is 25 years old and has an Associate's Degree in graphic design.  He does not work.  His only income is public welfare.  He lives with his fiancé and the couple's one year old daughter.  Jobs in the five year period prior to the hearing were jobs in a delicatessen, in a mental health facility and in a pharmacy as a technician.  He left his pharmacy job to spend more time with school work.  He worked greater lengths of time in 1999 when he was trying to buy a car.

He feels that he can not work because he takes a lot of naps, gets short of breath easily, and experiences tightening in his chest.  He uses a defibrillator.

He spends his days caring for his one year old daughter.  He gets help in caring for his daughter from his mother and his brother.  He watches day time television while his daughter is in her walker or in her playpen.  He serves leftovers or microwave food to his daughter and for himself during the day.  His fiancé is home in time from her work to prepare dinner for the three of them.  He uses a sleep medication to sleep at night because he naps a lot during the day.  The other medication that he takes is a muscle relaxer.

He can lift his twenty-five pound daughter.  He can walk around the block.  He gets tired when sitting and light-headed when he stands up.  He stands for up to two hours.

He drives.  He occasionally drinks alcoholic beverages and he occasionally smokes cigarettes.  He experiences heart palpitations a couple of times a month and he experiences light handedness on some occasions.  The heaviest lifting that he does is the lifting of his daughter.

3

He shops with his fiancé, but she carries the groceries. In warm weather, he said, it is very important for him to stay well hydrated.

He stated that he has never worked in the field of graphic design despite having completed a course in that field.

The vocational witness, Patricia Chilleri, stated in her testimony that the plaintiff's past work as a delicatessen clerk was light semi-skilled work. His past work as a residential aide monitor had been sedentary, or light, and unskilled. His work as a pharmacy clerk was light and semi-skilled.

The transcript of the vocational witness' testimony proceeds, at Tr. 220, as follows:

> "Q If I were to find that the claimant were capable of sedentary work as you just defined it, provided the work did not expose the worker to excess dust, odors,

4

fumes or extremes of temperature and humidity, could her return to any of his past work?

A The one component of the residential aid at one point was sedentary but it eventually proceeded to advanced to lite duty so.

Q Is that a recognized job as that was performed or is –

A Normally, Your Honor, the residential aid positions are medium to heavy duty work activity.

Q Now, would there be other work that would fall into this category?

A Yes, we would be looking at the Northeastern MSA a total civilian labor force of approximately 297,000. Security monitor 1,000, order clerk 1200, cashier 2100, information clerk 1200.

Q And this is in the Northeastern Pennsylvania labor market?

Are these jobs – the information clerk was 1200?

A Yes.

Q Do these jobs exist in other regions?

A Yes.

5

>    Q In similar number?
>
>    A Yes sir.  The incidence increases as the metropolitan statistical areas are increased or larger.
>
>    Q Now, if I were to accept the claimant's testimony as presented today could he perform these jobs?
>
>    A No.

On January 10, 2006, the ALJ issued his decision denying the plaintiff's application for benefits.  Tr. 13-18. The Appeals Council denied the plaintiff's request for review (Tr. 5), making the ALJ's decision the final decision of the Commissioner.

The plaintiff filed his complaint with this court on July 12, 2006.  The defendant filed an answer to the complaint and a copy of the administrative record on September 8, 2006. Pursuant to Local Rules 83.40.4 and 83.40.5, the plaintiff filed his brief on October 19, 2006 and the defendant filed her brief on November 20, 2006.  No reply brief has been filed.

If the Commissioner's decision is supported by substantial evidence it must be affirmed.  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995).  Substantial evidence is more than a mere scintilla of evidence but less than a preponderance.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence.  *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence."  *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The facilitate review of the Commissioner's decision under the substantial evidence standard, the Commissioner's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the Commissioner must indicated which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* At 706-707. In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

The Commissioner has promulgated regulations creating a five-step process to determine if a claimant is disabled. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and, (5) whether the claimant's

impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §404.1520 and 20 C.F.R. §416.920.

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he is unable to engage in his past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

In this case the ALJ determined that the plaintiff has not engaged in substantial gainful activity since the alleged onset date, that he has an impairment that is severe, that hsi impairments do not meet or equal any listed impairments, and that he is nto able to perform his past relevant work. The ALJ further determined that the plaintiff has the residual

9

functional capacity[1] to perform jobs identified by the vocational expert.

On the basis of these findings, the ALJ found the plaintiff not to be disabled.

The plaintiff argues that the ALJ erred in the finding that the plaintiff's hypotrophic cardiomyopathy does not meet or equal a listed impairment and in declining to accept the opinion of the plaintiff's treating physician, Dr. David S. Buyer.

The plaintiff described symptoms of tiredness, sleeping, and shortness of breath which if true would lead a vocational witness to consider him unable to work. The ALJ found no disabling heart condition because he found no "qualifying heart failure resulting in a marked limitation of

---

1. "Residual Functional Capacity" is "that which an individual is still able to do despite the limitations by his or her impairment(s)." *Burnett v. Commissioner of Social Security Adm.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)).

physical activity or, cardiomyopathies documented by appropriate imaging studies." Tr. 15.

The plaintiff argues that the elements of a Section 4.04 (ischemic heart disease) listing are present because he has "chest discomfort associated with myocardioschemia", has moderate to sever left atrial enlargement, and has findings consistent with hypertrophic cardiomyopathy.

The ALJ found a severe impairment, a cardiac impairment in the form of hypertrophic cardiomyopathy one requiring a course of medical care and treatment.

If the plaintiff has a severe impairment that meets or equals the criteria of a listed impairment, he is to be found at Step Three to be disabled on that basis.  20 CFR Section 404.1520. An analysis of whether or not the plaintiff has an impairment that is the equivalent of a listed impairment must go forward on the basis of an identification of the plaintiff's impairment(s) and of the relevant listings' criteria. *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000).  The plaintiff's

11

brief makes an argument that the criteria of Listing 4.04(B) are met.  The defendant argues that those criteria are not met.

A person with an impaired myocardial function as to whom an evaluating program physician has concluded that the performance of exercise testing would present a significant risk and who suffers a marked limitation of physical activity is considered to be disabled under the listings, section 4.04(B), if there is evidence of hypokinetic, akinetic, or dyskinetic myocardial free wall or septal wall motion with left ventricular ejection fraction of 30 percent or less.

The plaintiff's hypertrophic cardiomyopathy does not involve a 30% or less left ventricular ejection fraction.  Tr. 115.  ("Left ventricular ejection fraction was estimated to be 60%.") There is not evidence in his February 22, 2005 echocardiography report (Tr. 114-115) (or elsewhere insofar as the plaintiff's brief addresses) of free wall or septial wall motion.  ("Left ventricular and right ventricular systolic function were normal.  There were no segmental left ventricular wall motion abnormalities.") Tr. 115.

The plaintiff has failed to demonstrate error in the ALJ's Step Three decision that there was not a listed impairment shown in the evidence.

The other argument of the plaintiff is that the ALJ erred in declining to accept Dr. Buyer's reported opinion that the plaintiff is permanently disabled. The law in this area required the ALJ to place a higher weight on the treating physician's opinion in the absence of a reasonable basis for not doing so. *Rossi v. Califano*, 602 F.2d 55 (3d Cir. 1979); *Smith v. Schweiker*, 671 F.2d 789, 792-793 (3d Cir. 1982). The opinion in question is Dr. Buyer's opinion that the plaintiff "has a physical or mental condition which permanently precludes any gainful employment" and "is a candidate for Social Security Disability..." Tr. 93. The plaintiff asserts that pursuant to 20 CFR 404.1527(a) and 416.927(a) this opinion is entitled to controlling weight. The Commissioner responds that the ALJ correctly assigned no weight to this opinion because it is not a medical opinion but rather is an opinion on the medical-vocational question of disability and also because this opinion is not supported by Dr. Buyer's progress notes; that is, Dr.

13

Buyer did not write in his progress notes that "Plaintiff's cardiac condition resulted in functional limitations that would preclude his performance of the very minimal exertional requirements of sedentary work." Doc. 6, page 14.

These arguments of the Commissioner for the rejection by the ALJ of Dr. Buyer's opinion are not persuasive. The ALJ wrote in his Decision:

> Dr. David Buyer completed an employability assessment form wherein he indicated that the claimant was permanently disabled secondary to hypertrophic cardiomyopathy, pulmonic stenosis and a mildly dilated aortic root (exhibit 4F). In an office note of February Levin [sic], 2005, Dr. Buyer reports that the claimant experiences dyspnea with exertion, but denied any chest pain. The claimant described palpitations occurring a promptly [sic] once a month. On examination, the heart reveals a regular rate and rhythm with a 2-3/6 holosystolic murmur at the left lower sternal border which increases in intensity with valsalva, no rub and no gallop present (exhibit 10F). It is important to note that the issue of disability is reserved exclusively to the Commissioner (SSR 96-5P). Here, the preponderance of the medical evidence supports a finding that the claimant can perform sedentary work with the restrictions set forth above.
>
> The claimant has been treated and evaluated by Dr. Russell Schiff, a pediatric cardiologist. Dr. Schiff indicated in a correspondence dated March 13, 2002, that the claimant has severe asymmetric hypertrophy of his left ventricle with the diagnosis of hypertrophic cardiomyopathy. The claimant is to take appropriate

> medication and is reminded to stay well-hydrated, avoid caffeinated beverages and recreational drugs. The claimant was also cautioned against participating in moderate to strenuous physical activity (exhibit 9F). An electrocardiogram performed in 1996 showed sinus rhythm at a rate of 59 beats per minute (exhibit 16F).
>
> The claimant has also been evaluated by Dr. Jay Kurwin (exhibit 19F). Dr. Kurwin reports that the claimant has hypertrophic cardiomyopathy with a markedly thickened septum and a family history of sudden death. Dr. Kurwin advised the claimant to undergo defibrillator implantation (exhibit 20F). The procedure was performed successfully and a post-operative x-ray showed no diagnostic abnormalities. Heart sounds were clear with a systolic murmur noted. Tr. 15-16.

The Commissioner argues that it was correct for the ALJ to reject the opinion stated by Dr. Buyer, who is Board Certified in Cardiovascular diseases, that the plaintiff is disabled. The Commissioner refers to Dr. Buyer's notes of examinations and consultations with the patient. ("...nowhere in his progress notes did [Dr. Buyer] indicate that Plaintiff's cardiac condition resulted in functional limitations that would preclude his performance of the very minimal exertional requirement of sedentary work.") (doc. 6, page 14).

15

From this argument, we infer that it is the position of the Commissioner that the medical doctor is expected in progress notes to evaluate the medical-vocational impact of the patient's impairment(s).  Given this, we can not also reasonably accept the Commissioner's assertion that matters of the medical-vocational impact of the patient's impairment(s) "are not medical opinions, but are opinions on issues reserved to the Commissioner."  *Id.*

The Commissioner rejects the opinion of a treating physician that the plaintiff is disabled on the basis, also, that it is not "consistent with the record as a whole" because "no other doctor who treated or evaluated Plaintiff concluded that he had such a degree of functional limitations."  (doc. 6, page 15).  Thus, the Commissioner draws an inference from the absence in a medical report of a statement addressing the medical-vocational issue of disability that there is no evidence of disability.  But, on the other hand, the Commissioner refuses to draw an inference of disability from a medical doctor's report that addresses that issue and states

16

a positive finding on the issue, or even to give any weight to the statement even though the physician is a treating physician.

We think that it is quite possible that it is not necessarily customary for medical practitioners treating a medical condition to report upon the patient's residual functional capacity, or ability or disability to work, when not requested to do so.  The Commissioner needs to consider and to discuss the purposes and the expectations inherent in particular physicians' reports before supposing that any two or more are amenable to comparisons and contrasts on issues of disability and residual functional capacity.  We can not reasonably accept as valid both the proposition that the absence of a statement as to residual functional capacity or disability in a medical report supports an inference that there is not a residual functional capacity limitation or a disability and the proposition that a physician's statement that there is a disability supports no inference because disability is a medical-vocational determination for the Commissioner.

In this case, where the claimant has a heart condition, a severe impairment, resulting in weakness, tiredness and limitations, and where the claimant is advised by his physician to avoid moderate exercise and is of a family with a history of sudden death, it is clearly critical for the Commissioner to have and to employ a clear and consistent understanding of the exact medical and vocational assumptions underlying any cardiologist's opinion that the claimant is or is not disabled before drawing inferences from the absence of such opinions that there is no limitation on rejecting such opinions on the basis that they concern vocational issues.

The ALJ in considering the plaintiff's testimony that he experiences chronic fatigue and chest tightness, relies upon others to perform many household chores, drives on a limited basis, and experiences chest palpitations on exertions, found the plaintiff not to be credible. "Simply stated, the claimant's complaints are inconsistent with the clinical and diagnostic finding found of record particularly as they relate to the claimant's exertional abilities." Tr. 16. This finding by the ALJ is not explained.

It is recommended that this can be remanded to the Commissioner for further consideration of the plaintiff's credibility and of the medical evidence. The ALJ should take testimony from a medical expert concerning the plaintiff's residual functional capacity and dangers and concerns inherent in the plaintiff's performance of substantial gainful activity.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated: January 5, 2007.